# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES EDMONSON, | : | Civil No. 3:16-cv-1743 |
| Petitioner | : | (Judge Mariani) |
| v. | : | |
| GILLEY, | : | |
| Respondent | : | |

## MEMORANDUM

Presently before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by Petitioner, James Edmonson, an inmate currently confined at the United States Penitentiary, Canaan, in Waymart, Pennsylvania ("USP-Canaan"). (Doc. 1). Named as the sole Respondent is the Warden of USP-Canaan. Edmonson claims that his due process rights were violated in the context of a prison disciplinary hearing. The petition is ripe for disposition and, for the reasons that follow, will be denied.

## I. Background

On July 31, 2013, Edmonson was sentenced in the United States District Court for the Southern District of New York to a 52-month term of imprisonment for conspiracy to possess with intent to distribute cocaine base, and knowingly transferring firearms to be used in drug trafficking crimes. (Doc. 6-1, p. 2, Declaration of Michael Figgsganter, ¶ 3; Doc. 6-1, p. 5, Public Information Inmate Data). His projected release date is October 4, 2026, via good conduct time. (Doc. 6-1, p. 2, Declaration of Michael Figgsganter, ¶ 3; Doc.

6-1, p. 4, Public Information Inmate Data).

On February 9, 2016, a correctional officer conducted a random search of Edmonson's cell and found "a brown paste-like material" hidden under a toilet paper wrapper located on top of the desk. (Doc. 6-1, p. 8, Incident Report). The substance was referred to the Special Investigative Services office for testing with a NIK Test Kit E. (*Id.*). The substance tested positive for marijuana. (*Id.*).

On February 10, 2016, Edmonson was charged in incident report number 2814364 with possession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia not prescribed for the individual by medical staff, and possession of anything not authorized, in violation of Federal Bureau of Prisons ("BOP") Prohibited Acts Code Sections 113 and 305. (Doc. 1, p. 9; Doc. 6-1, p. 8).

A disciplinary hearing was held and the disciplinary hearing officer ("DHO") ultimately found that Edmonson committed the prohibited act of possession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia not prescribed for the individual by medical staff. The DHO expunged the charge of possession of anything not authorized. (Doc. 6-1, pp. 11-14, DHO Report). The DHO sanctioned Edmonson with a loss of 42 days of good conduct time, 60 days of disciplinary segregation, forfeiture of 41 days of non-vested good conduct time, 2 months impounding of personal property, 18 months loss of commissary privileges, 18 months loss of Trulincs privileges, 18 months loss

of visiting privileges and visiting restriction, and a monetary fine of $2.00. (*Id.* at p. 13).

The instant petition was filed on August 22, 2016. (Doc. 1). In the petition, Edmonson challenges the sufficiency of the evidence relied on by the DHO to find him guilty of a code 113 violation. (*Id.* at p. 5). For relief, Edmonson requests that the Court remand the matter to USP-Canaan to conduct laboratory testing of the confiscated substance, and that the Court expunge the incident report. (*Id.* at p. 6).

## II. Discussion

Respondent argues that the petition should be denied because Edmonson was afforded all of his procedural rights, and "some evidence" supports the finding of the Disciplinary Hearing Officer regarding incident report number 2814364. (Doc. 6, pp. 5-9).

As stated, on February 10, 2016, Edmonson was served with incident report number 2814364 charging him with violation of codes 113 and 305 for possession of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia not prescribed for the individual by medical staff, and possession of anything not authorized. (Doc. 6-1, p. 8). The reporting officer described the incident as follows:

> On 2/9/16 at approximately 6:15 pm, while conducting a random cell search of BA Cell 114 assigned to inmate Edmonson, James 65606-054, this reporting officer discovered a brown paste-like material hidden under [a] toilet paper wrapper located on top of the desk. The substance was sent to SIS tech Brandt for testing. SIS Tech Brandt utilized NIK test Kit E. The substance tested positive for cannabis paste, thus resulting in the above charges.

3

(Doc. 6-1, p. 8, Incident Report, ¶ 11).

On February 10, 2016, the investigating lieutenant gave Edmonson advanced written notice of the charges against him. (*Id.* at ¶¶ 14-16).

During the investigation, Edmonson was advised of his right to remain silent, he indicated that he had "no statement" regarding the charges, he exhibited a poor attitude, and did not request any witnesses on his behalf. (Doc. 6-1, p. 9, ¶¶ 23-25). At the conclusion of the investigation, the lieutenant determined that the report was true and correct as written, and Edmonson remained housed in the Special Housing Unit. (*Id.* at ¶¶ 26-27).

On February 11, 2016, Edmonson appeared before the Unit Discipline Committee ("UDC"). (Doc. 6-1, p. 8, ¶¶ 17-21; Doc. 6-1, p. 26). Edmonson acknowledged that he was advised of his rights, he indicated that understood his rights, and had "no comment" regarding the charges. (Doc. 6-1, p. 26). Due to the seriousness of the alleged act, the UDC referred the charges to the DHO with a recommendation that sanctions be imposed if Edmonson was found guilty of the alleged prohibited acts. (*Id.*).

On February 11, 2016, a staff member provided Edmonson with a copy of the "Inmate Rights at Discipline Hearing" form and "Notice of Discipline Hearing before the Discipline Hearing Officer (DHO)" form. (Doc. 6-1, pp. 27-29). Edmonson refused to signed for his copies of the forms. (*Id.*). Edmonson did not request to have a staff member

4

represent him and did not request to call any witnesses on his behalf. (*Id.* at p. 27).

On February 15, 2016, Edmonson appeared for a hearing before DHO Marc A. Renda. (Doc. 6-1, pp. 11-14, DHO Report). During the February 15, 2016 DHO hearing, the DHO confirmed that Edmonson received advanced written notice of the charges on February 10, 2016, that he had been advised of his rights before the DHO on February 11, 2016, and that Edmonson waived his right to a staff representative. (Doc. 6-1, p. 11, § I). The DHO again advised Edmonson of his rights and Edmonson indicated that he understood them. (Doc. 6-1, p. 11, § III). Edmonson made the following statement regarding the charges:

> "It's not what they say it is. I don't use drugs."
>
> When further interrogatories were posed by the DHO[,] Edmonson admitted ownership of the brown paste-like substance as depicted in photographic evidence, testified "I take the jelly and smoke cigarettes with it.", and also stated "You burn it. It gives you a sweet taste."

(Doc. 6-1, p. 11, § III, B).

Upon consideration of the evidence, the DHO found that Edmonson was guilty of a code 113 violation, and explained his decision as follows:

> The DHO finds based on the greater weight of the evidence that on February 9, 2016, at approximately 6:15 PM, as the reporting staff member conducted a search of cell 114 assigned to EDMONSON in the B1 housing unit, he discovered a brown paste-like material hidden under a toilet paper wrapper on the top desk, which subsequently yielded a positive reading with the NIK test kit E for Cannabis [Marijuana].

5

Specific evidence relied on to support this finding is the eyewitness account of the reporting staff member, as reflected in the incident report. He indicates:

. . .

> On 2/9/16 at approximately 6:15 pm, while conducting a random cell search of BA Cell 114 assigned to inmate Edmonson, James 65606-054, this reporting officer discovered a brown paste-like material hidden under [a] toilet paper wrapper located on top of the desk. The substance was sent to SIS tech Brandt for testing. SIS Tech Brandt utilized NIK test Kit E. The substance tested positive for cannabis paste, thus resulting in the above charges.

The DHO also relied upon a memorandum dated February 9, 2016, from N. Brandt, SIS Technician, which reflects in pertinent part, on the date of the incident she was notified by the Operations Lieutenant that the B1 housing unit officer discovered a brown paste substance inside a bottle cap during a search of a cell, upon arrival at the lieutenant's office she observed said substance, and testified [sic] an amount of the substance with the NIK test kit E resulting in a positive test for Marijuana; as well as five photographs depicting NIK test kit E, and brown paste-like substance in a bottle cap.

The DHO considered and affords little weight to EDMONSON's plea "It's not what they say it is. I don't use drugs.", and when further interrogatories were posed by the DHO he admitted ownership of the brown paste-like substance as depicted in photographic evidence, testified "I take the jelly and smoke cigarettes with it.", and also stated "You burn it. It gives you a sweet taste." The DHO finds his plea fails to exculpate him of the charge.

EDMONSON disputes the fact the substance found in his cell was marijuana, and claim[s] the substance was jelly and [he] smokes cigarettes with it. While this would also constitute prohibited conduct, it fails to negate his culpability. Here EDMONSON is attempting to hammer a rivet in a custard pie.

The facts and evidence substantiate the substance discovered in EDMONSON's cell was tested in accord with agency procedure and protocol, resulted in a positive test for marijuana, and as such the hearing officer will sustain the charge.

6

> Contraband by definition is "material prohibited by law, or by regulation, or material that can reasonably be expected to cause physical injury or adversely affect the security, safety, or good order of the institution." Rules regarding inmate property contribute to the management of inmate personal property in the institution, and contribute to a safe environment for staff and inmates by reducing fire hazards, security risks, and sanitation problems which relate to inmate personal property.
>
> The DHO considered all evidence and has drawn the conclusion that based on the greater weight of the evidence that the prohibited act of Possession of Any Narcotics, Marijuana, Drugs, Alcohol, Intoxicants, or Related Paraphernalia, Not Prescribed for the Individual by the Medical Staff (Code 113) was committed. The lesser series charge of Possession of Anything Not Authorized (Code 305) was expunged as the elements of his actions most satisfies that of Code 113.

(Doc. 6-1, pp. 12-13, § V).

The DHO reiterated that, in addition to the incident report and investigation, the documentary evidence which he considered in making his determination included the memorandum from the SIS Technician, the memorandum from the reporting officer, and five photographs depicting the NIK test kit E and the brown paste-like substance in a bottle cap. (Doc. 6-1, p. 12, § III, D). Edmonson presented no documentary evidence in support of his claim.

After consideration of the evidence, the DHO found that the greater weight of the evidence supported a finding that Edmonson committed the prohibited act of "Possession of Any Narcotics, Marijuana, Drugs, Alcohol, Intoxicants, or Related Paraphernalia, Not Prescribed for the Individual by the Medical Staff (Code 113)." (Doc. 6-1, p. 13, § V). As

7

such, the DHO sanctioned Edmonson with a loss of 42 days of good conduct time, 60 days of disciplinary segregation, forfeiture of 41 days of non-vested good conduct time, 2 months impounding of personal property, 18 months loss of commissary privileges, 18 months loss of Trulincs privileges, 18 months loss of visiting privileges and visiting restriction, and a monetary fine of $2.00. (*Id.* at p. 13, § VI). The DHO documented his reasons for the sanctions given as follows:

> The action/behavior on the part of any inmate to possess or use drugs or drug paraphernalia threatens not only the health, safety and welfare of himself, but that of all other inmates and staff within the institution. In the past, inmates under the influence of drugs have become violent toward other inmates, as well as staff, and this type of behavior cannot and will not be tolerated. The possession or use of illegal substances is illegal by federal law, and impedes the orderly running of a correctional institution. Illegal substances can only be obtained via unauthorized avenues.
>
> The effects of marijuana [or cannabis] vary with its strength and dosage and with the state of mind of the user. Typically, small doses result in a feeling of well-being. The intoxication lasts two to three hours, but accompanying effects on motor control last much longer. High doses can cause tachycardia, paranoia, and delusions. Although it produces some of the same effects as hallucinogens like LSD. Cannabis has psychoactive and physiological effects when consumed. The immediate desired effects from consuming cannabis include relaxation and mild euphoria (the "high" or "stoned" feeling), while some immediate undesired side-effects include a decrease in short-term memory, dry mouth, impaired motor skills and reddening of the eyes. Aside from a subjective change in perception and, most notably, mood, the most common short-term physical and neurological effects include increased heart rate, increased appetite and consumption of food[,] lowered blood pressure, impairment of short-term and working memory, psychomotor coordination, and concentration.
>
> The sanctions imposed by the DHO were taken to let the inmate know that

8

he, and he alone, will be held responsible for his behavior. The DHO will note for the record this inmate presents an extensive disciplinary history to include prior infractions for assault, use of drugs/alcohol, insolence, refusing to obey orders of staff, as well as demonstrates a continued inability to abide by institution rule. Chronic misconduct is corrosive towards correctional objectives. EDMONSON has earned multiple harsh marks on his disciplinary record. This conduct undermines the security and orderly running of correctional institutions, and is contrary to the foundation of good citizenship.

Disciplinary segregation, forfeiture of non-vested good conduct time, and disallowance of good conduct time was imposed to demonstrate the seriousness of his actions and as punishment for his conduct. The losses of commissary, TRULINCS, and visiting privileges, followed by a period of visiting restriction, as well as impounding of property and monetary fine, were imposed to deter further behavior. It is hoped that these sanctions prompt EDMONSON to modify his behavior and deter others from engaging in such activities in the future.

(Doc. 6-1, p. 14, § VII).

Edmonson was advised of his appeal rights at the conclusion of the hearing. (Doc. 6-1, p. 14, § VIII).

Edmonson's sanctions included the loss of good conduct time, therefore he has identified a liberty interest in this matter. The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. AMEND. V. Federal inmates possess a liberty interest in good conduct time. *See Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991).

In *Wolff*, the Supreme Court set forth the following minimum procedural due process

rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. *Wolff*, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985); *see also Griffin v. Spratt*, 969 F.2d 16, 19 (3d Cir. 1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. *Hill*, 472 U.S. at 457.

The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541, *et seq.*, and entitled: Inmate Discipline and Special Housing Units. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. *See Von Kahl v. Brennan*, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994). Pursuant to these regulations, staff shall prepare an incident report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers

informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.5. The incident is then referred to the UDC for an initial hearing pursuant to § 541.7. The UDC "will ordinarily review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays." 28 C.F.R. § 541.7(c). This period may be extended if the incident is being investigated for possible criminal prosecution. 28 C.F.R. § 541.4(c). If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. 28 C.F.R. § 541.7(f). If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing. 28 C.F.R. § 541.7(a), (g). The inmate will receive written notice of the charge(s) against him at least twenty-four hours before the DHO's hearing, however the inmate may waive this requirement. 28 C.F.R. § 541.8(c). The inmate is entitled to have a staff representative, appear at the hearing, make a statement, present documentary evidence, and present witnesses. 28 C.F.R. § 541.8(d), (e), (f). Following the hearing, the inmate will receive a written copy of the DHO's decision. 28 C.F.R. § 541.8(h).

In the matter *sub judice*, it is clear that Edmonson was afforded all of the required procedural rights set forth in *Wolff*. He received timely notice of the incident report. He was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to

present witnesses on his behalf. Edmonson declined a staff representative, declined to call any witnesses, and presented no evidence in support of his position. At the conclusion of the hearing, Edmonson received a written decision setting forth the evidence relied upon by the DHO and the rationale behind the decision. Edmonson was also notified of his right to appeal.

Since Edmonson was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decision by the DHO. The record clearly reveals the existence of evidence to allow the DHO to conclude that Edmonson was guilty of the charge. The DHO relied on the eyewitness account and memorandum of the reporting officer, the February 9, 2016 memorandum from SIS Technician N. Brandt who performed the NIK test indicating that the substance tested positive for marijuana, and five photographs depicting the NIK test kit E and brown paste-like substance in a bottle cap. (Doc. 6-1, p. 10; Doc. 6-1, p. 12, § D). The DHO also considered Edmonson's admission that the brown paste-like substance belonged to him. (Doc. 6-1, p. 12, § V). The DHO gave little weight to Edmonson's claim that the substance was not marijuana and his claim that he does not use drugs. (Doc. 6-1, p. 13, § V). Based upon this evidence as relied upon by the DHO, and without any contradictory evidence submitted by Edmonson, except his self-serving denial of the prohibited act charged, the Court finds that Edmonson's due process rights were not violated by the determination of the DHO.

Finally, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541, *et seq.* Edmonson was found guilty of a 100-level, greatest severity prohibited act. Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for 100-level offenses:

- A. Recommend parole date rescission or retardation.
- B. Forfeit and/or withhold earned statutory good time or non-vested good conduct time (up to 100%) and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
- B.1. Disallow ordinarily between 50% and 75% (27-41 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
- C. Disciplinary segregation (up to 12 months).
- D. Make monetary restitution.
- E. Monetary fine.
- F. Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
- G. Change housing (quarters).
- H. Remove from program and/or group activity.
- I. Loss of job.
- J. Impound inmate's personal property.
- K. Confiscate contraband.
- L. Restrict to quarters.
- M. Extra duty.

28 C.F.R. § 541.3 (Table 1). Thus, the sanctions imposed by the DHO in this instance were consistent with the severity level of the prohibited act and within the maximum available to the DHO. Accordingly, the petition will be denied as to incident report number 2814364.

## III. Conclusion

Based on the foregoing, the petition for writ of habeas corpus will be denied. A separate order shall issue.

Date: May 19, 2017

Robert D. Mariani
United States District Judge